OKLAHOMA TURNPIKE AUTHORITY,
Plaintiff in Error,

v.

Olga WILCOX, a widow; Homer F. Wilcox, Jr., and Mary Anne Wilcox, his wife; Richard P. Wilcox and Vail Wilcox, his wife; L. L. Wilcox and Beverly Wilcox, his wife; Betty W. McClintock and Harold S. McClintock, Jr., her husband; Virginia W. Hager and E. C. Hager, her husband, Defendants in Error.

No. 38110.

Supreme Court of Oklahoma.

June 23, 1959.

Looney, Watts, Looney & Nichols, Anna B. Otter, Oklahoma City, for plaintiff in error.

G. C. Spillers, G. C. Spillers, Jr., Tulsa, for defendants in error.

PER CURIAM.

Oklahoma Turnpike Authority, hereafter referred to as "Turnpike Authority" brought this action in condemnation against Olga Wilcox, a widow; Homer F. Wilcox, Jr. and Mary Anne Wilcox, his wife; Richard P. Wilcox and Vail Wilcox, his wife; L. L. Wilcox and Beverly Wilcox, his wife; Betty W. McClintock and Harold S. McClintock, Jr. her husband; and Virginia W. Hager and E. C. Hager, her husband, hereafter referred to as "defendants", to condemn for turnpike purposes 92.37 acres of defendants' 1548-acre ranch lying approximately 6 miles south of Claremore, Oklahoma, in Rogers County.

The trial court appointed commissioners to fix damages resulting to defendants' ranch from Turnpike Authority's taking 92.37 acres thereof. The commissioners fixed the damages at $85,512.50. Turnpike Authority paid said amount into court and demanded a jury trial, which trial resulted in jury verdict of $75,741.00. The trial court entered judgment in favor of defendants in the amount of the verdict. Turnpike Authority filed a motion for new trial and from the order denying said motion, perfected this appeal. Turnpike Authority bases its claim of error on the following propositions:

"(1) The verdict is exorbitant, based upon incompetent, insufficient and invalid evidence, and is the result of bias and prejudice upon the part of the jury.

"(2) Opposing counsel used prejudicial and inflammatory remarks in his argument to the jury, directly and adversely affecting the deliberations of the jury and resulting verdict."

The ranch consists primarily of so-called bottom land which is capable of producing alfalfa, oats, wheat and corn. The land is not subject to overflow. There are approximately 5,000 to 7,000 producing papershell pecan trees on the ranch from which pecans are annually harvested. The ranch is used primarily in producing beef. From 500 to 3,000 head of cattle are handled each year.

Improvements upon the ranch consist of approximately 25 buildings, among which is an all-steel building, 50 x 160 x 12, with a capacity for 800 tons of hay; there is an all-steel barn with a capacity for 400 tons of hay; there is another all-steel barn, 40 x 180, holding 600 tons of hay. There is a frame barn on an all-concrete foundation, together with another described all-steel barn. There is a combination dairy, horse and grain barn, and a big all-steel sheet-iron building used for a pecan shed. There are seven 1000-bushel all-steel graneries, upon all-concrete foundations. There are five large poultry houses. There are four modern dwellings on the ranch. There is storage space on the premises for 2,000 tons of hay and about 10,000 bushels of oats and a large amount of pecans. The improvements further consist of ponds everywhere one is needed. The farm is equipped with a 6" water line connected with Spavinaw Lake constructed down to the ranch headquarters, with laterals to all of the tenant houses on the premises and connected with water taps in the various fields so that if the ponds should fail, there would be water. There are no water lines to the part cut off. The ranch is served with electricity and has dial-telephone service out of Tulsa, Oklahoma.

Approximately 960 acres of the ranch is fenced with a 6-foot high animal-proof, woven-wire fence. The gates thereto are metal and the posts thereto, which are steel, are set in concrete. This fence is five or six miles long.

The turnpike was built on a high grade at the point where it crosses this ranch. This high grade and necessary culverts tended to split the ranch and served to isolate that portion of the ranch lying northwest of the turnpike from that portion lying southeast thereof. The grade also served to cut the southeast portion of the ranch off from Highway 66, which highway is a short distance northwest of the ranch.

■ After a careful examination of the entire record we find there is competent

evidence supporting the verdict of the jury and the judgment rendered thereon.

 In Colorado Interstate Gas Co. v. Lorenz, Okl., 330 P.2d 583, we held:

"In the absence of error in law, a verdict for damages in condemnation proceedings reasonably supported by competent evidence will not be set aside on appeal."

In Beckman, Inc. v. May, Okl., 331 P.2d 923, 925, we held:

"Where it is contended that the jury's verdict and trial court's judgment based thereon is not sustained by the evidence, such contention on appeal will be held without merit if there is any evidence, though conflicting, reasonably tending to support such verdict and judgment."

 We next consider Turnpike's contention that opposing counsel used prejudicial and inflammatory remarks in his argument to the jury, directly and adversely affecting the deliberations of the jury and the resultant exorbitant verdict. Turnpike Authority makes specific complaint of this argument by opposing counsel:

"Mr. Spillers: Would you like to have a tunnel right in your front yard, on your front lawn, where you would have to go 150 feet or maybe 200 through a dark mud hole in order to get out? And that's a permanent construction. Nobody can do anything about it. Gentlemen, I ask you to consider this, these experts who came here—who came here—or rather who appraised this thing for these people, who figure the cost of the construction. Now, I ask you, who owns this Turnpike? Who is putting up the money to build it?

"Mr. Watts: Just a minute, if your Honor please * * *

* * * * * *

"By the Court: Just a minute, objection will be sustained.

"Mr. Spillers: When you go to that Turnpike from the farm here, and want to get on it, where do you go? I ask you, where do you go? Claremore or Tulsa. It's no good, so far as these people are concerned, and if you get on it they will give you a ticket to the Turnpike Authority, and when you get off of there you pay the bill. Talk about bringing people in here—when you ride on it you may think you have been robbed, I don't know.

"Mr. Watts: Just a minute, if your Honor please, we are not trying the Turnpike Authority—the amount of toll just can't possibly show the value of this land."

Colloquy between counsel and the Court followed, at the close of which Mr. Spillers made further argument that Turnpike Authority objected to. The trial court gave this instruction to the jury:

"You will now listen to the argument of counsel, and you are instructed that the argument constitutes a material and legitimate part of the trial. You should carefully hear and consider any suggestions made by counsel when it tends to aid or assist you in analyzing the testimony of the witnesses and applying the law as given by the court, taking care, however, that such argument be not conflicting with the testimony of the witnesses, nor the instructions herein given you. You should entirely disregard any statement of counsel not based on the evidence, or which is not fair deduction therefrom.

" * * * No consideration of sympathy, sentiment, passion or prejudice should enter into your deliberations and the discharge of your duty as jurors, but you should carefully, fairly and conscientiously return such verdict as is warranted by the evidence, and these instructions, upon your oaths, as jurors."

In view of the fact that the trial court sustained Turnpike Authority's objection to a portion of the argument that it complains of and the fact that the trial court gave the instruction above quoted, we are

of the opinion that Turnpike's claim of reversible error based upon counsel for defendant's argument is not well taken.

Judgment affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.

BLACKBIRD, J., dissents.

The Court acknowledges the aid of the Supernumerary Judge, N. S. CORN, in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.