**MECHANICAL CONSTRUCTORS, INC.,**
Plaintiff in Error,

v.

**B–W ACCEPTANCE CORPORATION,**
Defendant in Error.

No. 40881.

Supreme Court of Oklahoma.

March 22, 1966.

F. V. Westhafer, Tulsa, for plaintiff in error.

Joseph LeDonne, Jr., Johnson & Fisher, Tulsa, for defendant in error.

PER CURIAM:

This action was brought by plaintiff, defendant in error herein, to recover judgment for $1,575.00, allegedly due for certain described appliances furnished defendant, plaintiff in error herein, and for which defendant failed to account.

In substance, plaintiff alleged and offered evidence to prove that certain air conditioning units had been sold to Archie's Air Conditioning Company, a partnership composed of Archie Peyton and Rex Brinlee, Jr., in March and May, 1961. Defendant was incorporated in January, 1962, as the successor in interest of Archie's Air Conditioning Company. The merchandise was delivered to defendant, who executed a trust receipt and attached time draft which were accepted by plaintiff. Defendant violated the terms of the trust receipt and the trust, by selling or converting certain of such appliances to his own use, and although demand had been made, defendant failed to account for merchandise covered by trust receipts or the balance due thereunder.

Numerous errors are asserted on appeal as grounds for reversal of this judgment. Under the record, and the arguments urged on appeal, the controlling complaints are that the petition did not state a cause of action, and the evidence was insufficient to support the judgment rendered.

The petition alleged a breach of contract, in that defendant took over the assets of Archie's Air Conditioning Company, executing trust receipts and time draft therefor, but violated the terms of the contract by converting to its own use, or otherwise disposing of the property, and thereafter refused to account for the trust property or the balance due thereon. The answer was by verified general denial, and specific denial that a co-partnership existed or that defendant became a successor thereto.

Plaintiff's claim was that the property shown on the trust receipts became assets of defendant. The evidence was directed toward showing defendant became the successor by taking over the assets listed with knowledge of the obligations, thereafter handling the property as its own, accounting only for the portion sold.

The evidence on behalf of plaintiff briefly summarized was as follows:

In 1961, Archie Peyton, an individual d/b/a Archie's Air Conditioning Company, purchased certain appliances from Capital Air Conditioning Corporation and executed wholesale floor plan trust receipts therefor to the plaintiff. In January, 1962, Archie Peyton, his wife, and Rex Brinlee, Jr., organized the defendant corporation, with Brinlee as president, at which time the place of business known as Archie's Air Conditioning Company was closed and its stock and equipment moved to the new location where the defendant carried on its business.

Thereafter, the agents of the plaintiff inventoried the appliances covered by plaintiff's trust receipt and after some difficulties they located all such appliances at defendant's place of business. From May 1, 1962, to October 25, 1962, several of these appliances were sold and checks in payment of such appliances were delivered to plaintiff. Each of these checks were drawn on the account of the defendant, and were

signed by both Rex Brinlee, Jr. and Archie Peyton.

In November, 1962, Rex Brinlee, Jr. bought the stock of Archie Peyton in the defendant corporation, and thereafter, the defendant refused to account to plaintiff for the remaining appliances on plaintiff's trust receipts. The value of the missing appliances was $1,575.00.

Rex Brinlee, Jr., when called as a witness by plaintiff, admitted that at the time the defendant corporation was formed, he knew Archie Peyton had some kind of floor plan arrangement with plaintiff covering the missing appliances. He admitted certain of the appliances were sold by the defendant, but denied that the appliances or the obligations of the trust receipts ever became the property of defendant corporation.

Defendant's theory was that it was not the successor of Archie's, and that the evidence failed to show corporate execution of the trust receipts, or any receipt of the assets and assumption of obligations. Thus defendant urges that the judgment was contrary to law, and not supported by the evidence.

The evidence on behalf of the defendant showed that at the time the corporation was formed, Archie Peyton had certain of the appliances covered by plaintiff's trust receipts on hand at his former business location; that Archie Peyton asked Brinlee for permission to move these appliances into the new business location for the sole purpose of disposing of them on his own account at cost; that some of these appliances were sold by the defendant solely as a convenience to Archie Peyton; that all appliances sold by defendant were paid for by defendant; that the defendant at no time assumed Archie Peyton's liability under the trust receipts of plaintiff; and that upon Peyton's withdrawal from the corporation, he moved the appliances covered by plaintiff's trust receipts from the business location of defendant.

At the close of the evidence the trial court instructed the jury that plaintiff bore the burden of establishing the affirmative allegations of the petition by a preponderance of the evidence. The court further instructed the jury:

"You are instructed that it is the theory of the plaintiff in this case that the trust receipt, containing a list of appliances, became an asset of the defendant, Mechanical Contractors, Inc., upon its incorporation, and therefore that the defendant is responsible for the obligations contained in the trust receipt.

"It is the theory of the defendant in this case that the trust receipt, containing the list of appliances, sued on herein, was an asset and obligation solely of Archie's Air Conditioning Company, and never became an asset of Mechanical Contractors, Inc.

"Therefore, if you find by a preponderance of the evidence that Mechanical Contractors, Inc., became the successor to Archie's Air Conditioning Company, and that the trust receipt became an asset and obligation of said Mechanical Contractors Inc., and you further find that the terms of the trust receipt have been breached by the defendant, then you will return a verdict for the plaintiff in a sum not to exceed $1,575.00, the amount sued for.

"If you fail to so find, you will return a verdict for the defendant."

■ Defendant specifically denied the defendant corporation became a successor to the assets and obligations of the trust. The evidence by both parties was directed toward proving and disproving this fact. No specific issue was raised under the pleadings or the evidence relative to the power of the corporation to assume the assets and obligations involved without formal action upon the original authority necessary to constitute ratification of the transaction. However, even absent formal ratification of an act, the general rule applicable is stated in 19 C.J.S. Corporations § 1020:

"Ratification by a corporation of a transaction not previously authorized is

more easily inferred where the corporation receives and retains property under it, and as a general rule where a corporation, through its proper officers or board, takes and retains the benefits of the unauthorized act or contract of an officer or agent, with full knowledge of all the material facts, it thereby ratifies and becomes bound by such act or contract, together with all the liabilities and burdens resulting therefrom * * *."

We have recognized and applied this rule many times. See Mid-West Chevrolet Corp. v. Noah, 173 Okl. 198, 48 P.2d 283; Outboard Marine Center v. Little Glasses Corp., Okl., 338 P.2d 1101; Yellow Jacket Boat Co. v. Little Glasses Corp., Okl., 338 P.2d 1105. The reasoning in Outboard Marine Center, supra, a jury waived action, is applicable here. And, in Roxana Pet. Co. of Oklahoma v. Goldrick, 113 Okl. 298, 242 P. 228, syllabus 6 states:

"Although a corporation may not have directly authorized an act which was performed by its president, yet where it accepts and retains the benefits of such an act it amounts to a ratification, and the company, in so ratifying the action taken, accepts the burdens along with the benefits to be derived."

The record discloses competent evidence showing the corporation received and retained benefits accruing from the taking over and handling of property under the trust receipts. The defendant will not be permitted to assert that it did not do this, particularly when no effort was made to produce defendant's books and prove the corporation did not receive any benefits from the transactions carried on with the trust property. Whether defendant acted as a matter of accommodation to Archie's Air Conditioning Co., rather than in the corporation's behalf, presented a question of fact. This issue was submitted to the jury under a proper instruction, and the jury determined the issue in plaintiff's favor.

■ This Court will not weigh the evidence in a case properly submitted to a jury. Kelley-Webb Realty Co. v. Allen, 199 Okl. 503, 187 P.2d 986. Nor will this Court substitute its judgment for that of the jury in the exercise of its function as a fact-finding body. Denco Bus Lines v. Hargis, 204 Okl. 339, 229 P.2d 560.

■ In an action of legal cognizance a judgment based upon a verdict of a properly instructed jury will not be disturbed if there is any evidence, although conflicting, reasonably tending to support the verdict. Harrell v. Horton, Okl., 401 P.2d 461; Missouri-Kansas-Texas Ry. Co. v. French, Okl., 368 P.2d 652; Price v. Clifton, Okl., 391 P.2d 252.

■ The evidence of the plaintiff was sufficient to warrant the jury in finding that the defendant corporation, as successor to Archie's Air Conditioning Company, assumed the obligations of the trust receipts of plaintiff. There was competent evidence to support the verdict and judgment rendered.

The judgment of the trial court is therefore affirmed.

The Court acknowledges the services of Robert C. Lollar, who with the aid and counsel of Melvin Landers and Dick Wheatley, Jr., as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to BERRY, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.