Juanita REEDY, Plaintiff in Error,

v.

Ruby WEATHERS, Defendant in Error.
No. 42567.

Supreme Court of Oklahoma.
June 30, 1970.

Van Cleave, Thomas, Liebler & Gresham, by Harley Van Cleave, Tulsa, for plaintiff in error.

Best, Sharp, Thomas & Glass, Joseph A. Sharp, Jack M. Thomas, Tulsa, for defendant in error.

LAVENDER, Justice.

This appeal, by the plaintiff below, Juanita Reedy, arises in an action for damages to her automobile, and for damages resulting from personal injuries, in the total amount of $6,614.70, allegedly sustained by the plaintiff as the result of a three-car collision involving automobiles being operated by the plaintiff, and by the defendant in error, Ruby Weathers (hereinafter called the defendant), and by one Emmitt Davis, who is not a party to this appeal.

The plaintiff alleged in her petition that the collision and her injuries and damages were the proximate result of combined acts of negligence on the part of Emmitt Davis and the defendant in the operation of their vehicles.

Davis was named as a defendant and was served, personally, with summons, but filed nothing in the case and did not appear at the trial. Trial to a jury resulted in a verdict, and judgment thereon, in the amount of $2,500.00, for the plaintiff and against both of the defendants. Davis did not file a motion for a new trial within the time allowed therefor by statute. The judgment as against him, became final and was allowed to stand when the trial court sustained this defendant's motion for a new trial and vacated the judgment as against her.

The subsequent new trial, to a jury, resulted in a verdict, and judgment thereon, for the defendant Weathers. The plaintiff's motion for a new trial was overruled by the trial court and she appealed to this court, contending, in one of her two propositions, that the verdict of the jury is not supported by the evidence and is contrary to law.

For reasons which will appear later herein, we do not outline the evidence as disclosed by the record on appeal. The defendant's brief does not dispute any of the statements made in the plaintiff's brief concerning the evidence, which are the basis of the statements of facts outlined herein.

The collision occurred on East 21st Street in the City of Tulsa, Oklahoma, about 150 feet east of its intersection with Lewis Avenue. In that vicinity, 21st Street was a four-lane, two-way, paved street, with two traffic lanes for east-bound traffic and two traffic-lanes for west-bound traffic. All three cars were headed east on 21st Street and were completely within the left-hand lane for east-bound traffic when the collision occurred.

At a point about 150 feet east of Lewis Avenue, the plaintiff brought her car to a complete stop behind a fourth car which had stopped in such left lane while in the process of making a left turn to enter a parking lot on the north side of 21st Street. When the plaintiff stopped her car, Davis brought his car to a complete stop behind her car and the defendant's car struck his car from the rear and knocked it into the rear-end of the plaintiff's car.

The plaintiff pleaded that Davis' negligence consisted in his failure to indicate his stop, either by arm signal or by stop light on the rear of his car, as provided in a pleaded ordinance of the City of Tulsa, and that the defendant's negligence consisted in driving her car, immediately behind the Davis car, in a manner which violated a pleaded ordinance of the City of Tulsa which provided that "any speed greater than that which will enable the driver of vehicle to stop within the assured clear distance ahead is unlawful."

A Tulsa police officer who investigated the collision, testified that none of the cars had been moved when he arrived at the scene; that there were no tire-skid-marks behind any of the cars; that he checked the stop lights on the plaintiff's car and they were working; that he checked the stop lights on the Davis car and they were not working, and Davis told him that he had not given a hand signal when stopping his car; that the defendant told him that she had changed from the right-hand lane to the left-hand lane, just before the collision, to get around a vehicle that had stopped in front of her, and could not tell that the Davis car was stopping because the brake light did not come on; that, since the defendant's car left no skid marks, he could not determine how fast it was going but would agree with the defendant's own estimate of five to seven miles per hour.

The defendant testified that it was cloudy at the time of the collision, but she could see five or six blocks; that she was going east on 21st Street in the right-hand lane after stopping for a red light at Lewis Avenue; that there was one or two cars ahead of hers; that, when a bus stopped

immediately ahead of her car, she looked behind her, pulled into the left-hand lane, and accelerated to about five to seven miles per hour; that she did not notice that the Davis car was stopping until it was about a car length away when she noticed that their cars were getting closer together; that the brake lights on the Davis car had not come on and she did not see the driver give any signal of stopping; that she started to apply her brakes when the cars were about a car length apart, but could not touch the brake in time to avoid the collision. She admitted that she had been talking with a passenger in her car immediately before the collision.

The plaintiff testified concerning the amount of damage to her car and concerning her injuries and regular visits to her doctor, a three-day stay in a hospital at the direction of another doctor, and her doctor and hospital bills. She stated that her neck was caused to jerk by the impact or the collision, but did not feel any pain at that time (the police officer testified that she had not mentioned any injury when he investigated the collision), but began to feel it after she reached her office and had been bothered with pain ever since. Her attending doctor testified concerning her injuries, his treatment and prognosis. A physician with 37 years of specialization in orthopedics, who had examined the plaintiff at the request of the defendant about a year and ten months after the collision, or about five months prior to the trial, testified, upon behalf of the defendant, that the plaintiff complained of pain in turning her head to the left but that there was no complaint of pain in raising or lowering her head; that her neck appeared normal to him, but he could not tell about pain or headaches; and that serious injuries usually cause immediate pain, whereas minor ones might not cause pain until later.

Under her proposition that the jury's verdict is not supported by the evidence and is contrary to law, the plaintiff argues, first, that her car would not have been struck by the Davis car and she would not

have been damaged, if the Davis car, which had come to a complete stop, had not been struck by the defendant's car; that, regardless of whether or not Davis failed to give any signal of stopping, in violation of the pleaded ordinance, the fact that the defendant's car struck the Davis car and knocked it into the plaintiff's car in spite of the defendant's having noticed that the Davis car was slowing down, establishes that the defendant was guilty of negligence per se by driving her vehicle at a speed greater than that which would allow her to stop the vehicle within the assured clear distance ahead, in violation of the other pleaded ordinance; that the defendant's admission that she was talking with a passenger in her car at the time of the collision also establishes negligence on her part; and that contributory negligence on the part of the plaintiff could not have been involved in the verdict, because there was no evidence of contributory negligence and the trial court gave no instruction thereon.

From this, the plaintiff argues that, under the law of the cases cited in her brief, the defendant could not be allowed to escape liability for her negligence, so established, merely by showing that another, sued as a joint-tort-feasor with her, was in part responsible for the plaintiff's damages; that the jury's verdict allowed the defendant to escape liability for her established negligence by shifting all of the liability onto Davis under the prior judgment against him, and, therefore, is contrary to law.

 The plaintiff's motion for a new trial did contain an allegation that the verdict and judgment for the defendant were not sustained by sufficient evidence and were contrary to law. However, there is nothing in the record to indicate that she demurred to the defendant's evidence or moved for an instructed verdict of any kind, or in any other manner called the trial court's attention to the alleged insufficiency of the evidence, under the law, to support a verdict for the defendant, before filing her motion for a new trial.

In McDonald v. Strawn (1920), 78 Okl. 271, 190 P. 558, the plaintiff contended that the jury's verdict was not sustained by sufficient evidence. In disposing of that contention (although reversing the judgment on other grounds), this court held, in the second paragraph of its syllabus:

"Whether or not there is sufficient evidence to go to the jury in a law case is a question of law, and that question must be presented: (1) To the trial court by a demurrer to the evidence or motion to direct a verdict, a ruling made, and exception saved; (2) the alleged error in sustaining or overruling the demurrer to the evidence or motion to direct a verdict must be preserved by a motion for a new trial, ruling thereon by the trial court, and exception saved. Then this court on appeal will review the alleged error of law committed by the trial court in sustaining or overruling such demurrer or motion to direct a verdict; otherwise the sufficiency of the evidence to support the verdict cannot be inquired into by this court. See paragraph 1, opinion."

And, in a similar situation in Bredouw v. Jones et al. (1966), Okl., 431 P.2d 413, this court held in the fourth paragraph of its syllabus:

"In a law action where the plaintiff submits its case to the jury, without demurring to the evidence or asking for an instructed verdict, and does not challenge the sufficiency of the evidence until a motion for new trial is filed, the question of whether there is sufficient evidence to support the verdict for the defendant will not be considered on appeal."

However, under those cases, such rule does not preclude this court from considering other alleged errors which were properly preserved for review but which do not require a consideration of all of the evidence.

The plaintiff's other proposition for reversal is that certain comments made by the trial judge and by the defendant's attorney, in the presence of the jurors, combined to prejudice the jurors against the plaintiff, by informing them that there had been a previous trial of the case at which judgment had been rendered against the other original defendant. Her basic argument is that the jurors inferred from such comments that the plaintiff was seeking a "double recovery" (a term not explained in her brief), and that their prejudice against the plaintiff is established by the fact that they rendered a verdict in favor of the defendant, which was contrary to, or not supported by, the evidence.

The comments by the trial judge, complained of by the plaintiff, were a part of the statements concerning the case, preliminary to voir dire examination of the prospective jurors:

"As stated before, this case was originally filed by Juanita Reedy against Ruby Weathers and Emmitt Davis. Since the filing of this action a judgment has been rendered against Emmitt Davis, and he will therefore not be present in the court room."

Although not mentioned by the plaintiff, the case-made discloses that the trial judge continued his remarks on the subject, without interruption or time lag:

"Your duty as jurors in this case will be to determine the liability or lack of liability on the part of the defendant Ruby Weathers. Where there are two or more joint tort feasors that contribute to an accident you can find against both of them whether one in 99 per cent liable, or whether merely one per cent liable. Your duty as jurors in this case is to determine the liability of Ruby Weathers."

Plaintiff's motion for the court to declare a mistrial because of the mention of the previous judgment against Emmitt Davis was overruled by the trial court.

The formal, written instructions given to the trial jury at the close of the evidence (none of which is attached by the plaintiff in her appeal) included instructions as to the law concerning combined or concurring negligence of joint defendants, and any ver-

dict mentioned in such instructions could only be in favor of the plaintiff and against the defendant Ruby Weathers, or in favor of the defendant Ruby Weathers.

The plaintiff cites the case of Pressley et al. v. Incorporated Town of Sallisaw et al. (1916), 54 Okl. 747, 154 P. 660, for the proposition that one way to tell whether a statement by the trial judge in the presence of the jurors during the trial of a case made a lasting impression on the jurors and influenced their verdict is to see if the verdict is consistent with the evidence.

The appeal in that case did not involve the evidence. The verdict in that case, for the defendant town but against the defendant contractor doing work in the process of which an employee of the contractor had sustained fatal injuries, was inconsistent with the trial court's formal, written instructions at the close of the evidence, to the effect that, because of the terms of their written contract, the contractor was acting as agent for the town and the town would be liable if the contractor were liable. However, the verdict was consistent with a voluntary remark made by the trial judge, early in the trial after perusing the written contract involved, to the effect that, because of the terms of the contract, it was his view, at that time, that the town was not liable. That expression of opinion by the trial judge was the only logical basis for the jury's verdict in conflict with the above-mentioned formal instruction to the jury.

▮ On the theory that the trial judge's statement, in the present case, as to the outcome of the case as against the defendant Emmitt Davis, clearly and unquestionably went to the merits of the case and, therefore, were prejudicial to this plaintiff's case, the plaintiff cites Empire Oil & Refining Company et al. v. Fields (1940), 188 Okl. 666, 112 P.2d 395, and Key et ux. v. British American Oil Producing Company (1945), 196 Okl. 663, 167 P.2d 657, as holding (in part) that:

"A trial judge should refrain from any comments during the conduct of a trial in the presence of the jury as to the merits of the case or the truth or falsity of the testimony, * * *."

Only to show that, under the rule relied upon by the plaintiff, not every comment or remark made by a trial judge in the presence of the jurors, as to the merits of the case or the truth or falsity of the testimony, will require a reversal of the judgment, we note that the rule, as quoted by the plaintiff, appears in a paragraph of the court's syllabus to each case and that, in each instance, the syllabus paragraph ends with the statement (based upon our "harmless error" statute, now 22 O.S. 1961 § 1068) that:

"* * * no comment or remark of the judge will be ground for reversal where the substantial rights of plaintiff in error have not been violated."

▮ The present case does not involve remarks concerning the testimony. There is nothing in the trial judge's comments or remarks which indicates or suggests a preference for one or the other of the litigants, or which indicates or suggests an opinion as to what the outcome of the case should be as between the plaintiff and the defendant Ruby Weathers, or which in any other way expresses, indicates, or suggests, an opinion of the trial judge concerning the merits of the case as between the plaintiff and the defendant Ruby Weathers. Consequently, the rule of those cases, even as set forth in the plaintiff's brief, has no application to the situation in the present case.

▮ It is readily apparent that, in the present case, the trial judge's remarks, hereinabove quoted, were made after the preliminary statements to the prospective jurors, concerning the case, had naturally and normally disclosed to them that the case had been filed by the plaintiff against Ruby Weathers and Emmitt Davis as joint defendants. Obviously, they were made for the purpose of preventing any confusion in the minds of the prospective jurors by simply telling them the truth about why one of the defendants was not involved in that trial and their duty as jurors would be to

determine the liability, or lack of liability, of the other defendant only.

The plaintiff cites no authority to the effect that, in such circumstances, the trial judge's mention, in the presence of the jurors, of a previous trial and the result thereof insofar as one of two alleged joint tort feasors was concerned, without expressing, indicating, or suggesting, an opinion as to the liability, or lack of liability, of the remaining defendant, constitutes error, or even irregularity, on the part of the trial judge.

The "comments" by the defendant's attorney, complained of by the plaintiff herein, actually were two questions asked during cross-examination of the doctor who had been consulted by the plaintiff some two weeks after the collision. They involved previous statements made by the doctor concerning what was disclosed by a certain x-ray picture that had been introduced in evidence by the plaintiff in this case. After the first of the two questions (which concerned his statement about the x-ray picture "in your previous court proceeding"), plaintiff's counsel moved the court to declare a mistrial because of the question. That motion was overruled. After the second question (which concerned his statement about the x-ray picture, made "prior to today under oath"), plaintiff's counsel objected on the ground that the same was incompetent, irrelevant and immaterial, and improper cross-examination. That objection was overruled, and the witness answered the question. Obviously, as defendant's counsel stated at the time, the questions were asked for impeachment purposes.

With respect to these questions by defendant's attorney, the plaintiff cites City of Shawnee v. Sparks (1910), 26 Okl. 665, 110 P. 884, and Green Construction Company v. Lampe et al. (1935), 174 Okl. 351, 50 P.2d 286, as holding (in part) that:

"Where counsel in an argument makes a statement of material fact not in evidence against the objection of the other party, he violates the right of fair trial, and where the trial judge fails to pass squarely on the objection, and, if sustained, fails to admonish the jury to disregard such statement as not in evidence, we must reverse * * *."

Only for the purpose of showing the complete rule, as stated in the syllabus to each of those cases, we note that, in each instance, the omitted portion of the syllabus paragraph says: "unless this court can ascertain from the record that no harm resulted"—which makes the rule, as stated by the plaintiff in her brief, subject to the "harmless error" doctrine.

Patently, those cases are not in point in the present case. The plaintiff cites no authority indicating that the rules concerning impeachment of witnesses in a situation like that involved herein are any different from the rules concerning the impeachment of witnesses in any other situation.

Plaintiff's proposition concerning the trial judge's remarks and defense counsel's questions cannot be sustained.

Judgment affirmed.

IRWIN, C. J., and DAVISON, WILLIAMS, HODGES and McINERNEY, JJ., concur.

BERRY, V. C. J., and BLACKBIRD and JACKSON, JJ., concur in result.